J-S02016-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| LOVELL A. RODGERS | : | |
| | : | |
| Appellant | : | No. 306 EDA 2025 |

Appeal from the PCRA Order Entered December 30, 2024
In the Court of Common Pleas of Monroe County Criminal Division at
No(s): CP-45-CR-0001204-2018

BEFORE: NICHOLS, J., MURRAY, J., and BENDER, P.J.E.

MEMORANDUM BY MURRAY, J.: **FILED MARCH 3, 2026**

Lovell A. Rodgers (Appellant) appeals from the order denying his first petition for relief filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. After careful review, we affirm.

In a prior appeal, this Court succinctly summarized the facts underlying this appeal:

> Appellant's convictions resulted from his actions, with co-conspirators,[1] in defrauding Pennsylvania's Workforce and

_____

[1] Appellant was charged along with five co-conspirators, including his wife, Marsha Rodgers (Marsha). The five co-conspirators ultimately entered guilty pleas. **See** N.T. (Sentencing), 9/20/21, at 3; **see also** PCRA Court Opinion, 4/14/25, at 8-9 (stating that all of the co-conspirators were offered plea bargains, and Appellant knew before jury selection started in his case that the remaining co-defendants had pled guilty).

*(Footnote Continued Next Page)*

Economic Development Network (WEDnet). WEDnet is a state-funded program that reimburses manufacturers and technology companies for employee training.

… Appellant us[ed] a dormant corporation[, R1 Incorporated,] he formed to revive "the well-oiled WEDnet scam" of one of his co-conspirators[, John Marino (Marino)]. The WEDnet program specifically excludes restaurants and retail employers. Appellant owned a restaurant, and used his dormant corporation (with no revenue or employees) to submit fake invoices to WEDnet for training that never occurred. In return, Appellant received fraudulent training reimbursement from WEDnet, deposited the funds into the [R1 Incorporated] account, then distributed same to support the [r]estaurant and himself.

*Commonwealth v. Rodgers*, 281 A.3d 107, 2163 EDA 2021 (Pa. Super. 2022) (unpublished memorandum at 1-2) (one footnote added; citations, footnote, and some quotation marks and brackets omitted).[2]

Relevantly, the process for obtaining grant reimbursement is as follows:

To qualify for grant reimbursement, a company point of contact ("POC") must first execute an inquiry form on the WEDnet website to determine eligibility for the program. If the company meets the threshold requirements, the POC executes a Memorandum of Agreement ("MOA") through the WEDnet website certifying that the business meets certain additional requirements. The MOA includes a certification by the applicant that they are eligible to receive the funds, and [advises] that providing knowingly false information will result in legal action. …

_____

Notably, the judge who presided over the instant PCRA proceedings also presided over Appellant's trial, as well as the plea hearings for Appellant's co-defendants and their combined sentencing hearing.

[2] In the Rule 1925(a) opinion written in connection with Appellant's direct appeal, the trial court summarized the fraudulent scheme in detail. *See* Trial Court Opinion, 1/20/22, at 9-14.

> Once complete, the MOA is signed electronically and submitted to WEDnet. Following this, the completed inquiry and MOA are submitted to the local WEDnet partner for review. If the partner approves the submitted information, it is sent to WEDnet … for final approval. Once the MOA is executed and approved by WEDnet, a contract is formed and the POC is authorized to submit invoices for training…. In this case, East Stroudsburg University [issued] the relevant reimbursement checks.

PCRA Court Opinion, 4/14/25, at 15 (quoting Trial Court Opinion, 1/20/22, at 9-10).

The MOAs submitted on behalf of R1 Incorporated identified Appellant as POC, company executive, and the WEDnet system's registered user, and included Appellant's home address as the contact address. *Id.* (citing Trial Court Opinion, 1/20/22, at 11). The pertinent MOAs "were transmitted with Appellant's digital signature." *Id.* At trial, the parties stipulated that all online communications between WEDnet and R1 Incorporated (as well as companies used by Marino in connection with the scheme) were made on a computer in Marino's home. N.T. (Jury Trial), 7/12/21, at 75-76.[3]

_____

[3] Relevantly, after the parties stipulated that all communications were made using a computer in Marino's home, Janet Jackson, Esquire (Attorney Jackson), stated she had no objection to Commonwealth's Exhibit 4 (records pertaining to R1 Incorporated), "with the understanding that the stipulation indicates that the items that are contained therein were submitted by [] Marino or from the computer at [] Marino's home." N.T., (Jury Trial), 7/12/21, at 76. The prosecutor promptly requested a sidebar, at which time the parties discussed whether the stipulation meant Marino was the individual who submitted the documents. *Id.* at 76-77; *see also id.* at 77 (Attorney Jackson stating, "You stipulated that they were made from [Marino]."). The trial court then ruled, "You stipulated that the communications were sent from [Marino's] computer. There's no stipulation as to who did them. That's up to the jury to decide." *Id.* at 77.

On July 14, 2021, a jury convicted Appellant of one count each of dealing in proceeds of unlawful activities, criminal conspiracy (dealing in proceeds of unlawful activities), and corrupt organizations; four counts of theft by unlawful taking; and ten counts of tampering with public records or information.[4] The trial court sentenced Appellant to an aggregate 2 to 5 years in prison, followed by 3 years' probation.

This Court affirmed Appellant's judgment of sentence on June 14, 2022, and the Pennsylvania Supreme Court subsequently denied allowance of appeal. *Rodgers*, 281 A.3d 107 (unpublished memorandum), *appeal denied*, 289 A.3d 42 (Pa. 2022).

On December 11, 2023, Appellant, through counsel, filed the instant timely PCRA petition. Appellant alleged his trial counsel[5] were ineffective for failing to (1) investigate and introduce evidence of Appellant's timesheets; (2) object to the prosecutor's statement, during closing argument, regarding specific text messages Appellant exchanged with one of his co-conspirators; (3) object to testimony by certain Commonwealth witnesses that Appellant signed several electronic documents; and (4) accurately disclose to and

---

[4] 18 Pa.C.S.A. §§ 5111(a)(1), 903, 911(b), 3921(a), 4911(a)(2). The jury acquitted Appellant of one count of theft by unlawful taking and four counts of tampering with public records.

[5] Appellant was represented by Attorney Jackson and Tyree A. Blair, Esquire (Attorney Blair) (collectively, trial counsel), through his jury trial. Appellant subsequently retained Timothy Tarpey, Esquire, to represent him at sentencing and during his direct appeal.

counsel Appellant concerning a plea deal offered by the Commonwealth. The Commonwealth filed a response. Appellant subsequently filed an amended PCRA petition, to which he attached as exhibits various timesheets and paystubs from his employment with United Airlines.

The PCRA court conducted an evidentiary hearing on March 11, 2024, during which Appellant, Attorney Jackson, and Attorney Blair testified. During the hearing, Appellant withdrew his second ineffectiveness claim (concerning the prosecutor's statements about text message exchanges). After Appellant and trial counsel testified, the PCRA court recessed the hearing until June 11, 2024. The PCRA court directed that (1) the hearing would be "limited to presentation of the testimony of [Appellant's w]ife[, Marsha,] and rebuttal by the Commonwealth if any[;]" and (2) Appellant provide the Commonwealth a proffer concerning Marsha's testimony. PCRA Court Order, 3/11/24.

During the second day of the hearing, on June 11, 2024, Appellant focused on his fourth ineffectiveness claim (concerning an alleged plea deal). Marsha testified regarding her understanding of the alleged second plea offer. Attorney Jackson also testified. At the close of the hearing, the PCRA court ordered Appellant to request the transcripts from the hearing within five days, and directed the parties to file any post-hearing briefs within 30 days after the filing of transcripts.

Appellant and the Commonwealth each filed a post-hearing brief. On December 30, 2024, the PCRA court entered an order denying Appellant's

PCRA petition. This timely appeal followed. Appellant and the PCRA court have complied with Pa.R.A.P. 1925.

On appeal, Appellant raises the following issue for our review:

Did the PCRA court err and abuse[] its discretion by dismissing Appellant's petition for post-conviction relief, based upon the ineffectiveness of prior counsel?

Appellant's Brief at 4.

We adhere to the following standard of review:

Our standard of review from the denial of a PCRA petition is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error. The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions.

*Commonwealth v. Miranda*, 317 A.3d 1070, 1075 (Pa. Super. 2024) (citation omitted).

Further, "[a] court's review of a claim of ineffective assistance of counsel begins with the strong presumption that counsel was effective."

*Commonwealth v. Pacheco*, 340 A.3d 1038, 1041 (Pa. Super. 2025).

To overcome this presumption, [the PCRA petitioner] must demonstrate that: (1) the underlying substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the defendant suffered prejudice as a result of counsel's deficient performance. A claim of ineffectiveness will be denied if the [petitioner's] evidence fails to meet any one of these prongs.

*Commonwealth v. Hanible*, 30 A.3d 426, 439 (Pa. 2011) (internal citations omitted). "To establish the prejudice prong, the petitioner must show that

- 6 -

there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's ineffectiveness." *Id.*

Appellant offers three arguments to support his assertion that trial counsel were ineffective; we address each one in turn. First, Appellant claims trial counsel rendered ineffective assistance by failing to investigate and introduce as evidence timesheets from his job at United Airlines. Appellant's Brief at 19-20. According to Appellant, "the timesheets would have shown that Appellant was working in a different state at the time of the alleged criminal actions." *Id.* at 21. Appellant avers that he asked Attorney Jackson to obtain the timesheets, but she failed to do so. *Id.* at 22.

> Appellant argues the timesheets
>
> would have clearly demonstrated that Appellant himself was incapable of having filed any documentation for the WEDnet scam. Specifically, the time sheets support that Appellant worked for a significant period of time, during the day, and had limited opportunity to be involved in any extraneous activities. Additionally, it demonstrates that Appellant was gainfully employed, calling into question the motive of Appellant to commit such a financial scheme. This strengthens Appellant's testimony that he had no knowledge of the fraudulent activities being conducted by [co-defendant John] Marino.

*Id.* at 23. Appellant also contends trial counsel had no reasonable basis for failing to seek this evidence. *Id.* at 24. Finally, Appellant claims trial counsel's failure to obtain the timesheets and offer them as evidence caused him

prejudice, as such evidence would have substantiated his lack of involvement in the scheme.  **Id.** at 26.[6]

In addressing Appellant's argument, the PCRA court first points out that the underlying claim "contains echoes of the arguments he posited in his direct appeal."  PCRA Court Opinion, 4/14/25, at 18; **see also id.** (explaining that on direct appeal, Appellant asserted the evidence did not establish that Appellant was present in Marino's home when the fraudulent documents were submitted to WEDnet).

The PCRA court further rejected Appellant's claim as follows:

Appellant presents this argument only as a general argument without even attempting to correlate dates that he worked or was out of town with the creation of any specific WEDnet application, MO[A], or invoice, with any other action taken in furtherance of the fraud scheme, with any specific count in the information, or with any specific time frame.  In this regard, fraudulent WEDnet documents and invoices were submitted over the course of two grant/fiscal years[,] from October of 2014 through the spring of 2016. … However, even though he had substantial time to gather time sheets and employment information, Appellant did not[,] during the PCRA proceedings[,] introduce timesheets for the entire period or that correspond to all the fraudulent WEDnet submissions.  Instead, he presented only "clock-in" records for selected dates in November 2015, April 2016, and October 2016, and bi-weekly pay stubs, which do not indicate days worked, from March 21 through November 13, 2015.  Further, he did not fully explain the records or show how they corresponded to any significant date or action taken in furtherance of the fraud scheme.

_____

[6] Appellant argues generally that he suffered prejudice as a result of trial counsels' failure to obtain and offer the timesheets.  However, Appellant does not detail <u>how</u> he believes the outcome of trial would have been different had the timesheets been admitted (*i.e.*, which charged offenses would have reasonably resulted in an acquittal).

Given the generality of the time record and of Appellant's argument, the employment records do not[,] on their face and as presented during the PCRA proceedings[,] establish that Appellant was at work on the dates that fraudulent WEDnet documents were submitted[,] or actions in furtherance of the fraud scheme were taken. Likewise, the documents[,] as generally presented[,] do not explain and show that Appellant was not involved in the illegal scheme perpetrated by [] Marino and his other co-defendants, **do not corroborate Appellant's testimony that he had no knowledge of, or involvement** [**in,**] **the submission of fake invoices, MOA**[**s**]**, or any other documentation relating to the WEDnet**[] **scam**, and do not show it was exceptionally unlikely for Appellant to have carried out or taken part in such a complicated scheme against the state government. Simply, on this issue, Appellant failed to establish the requisite reasonable probability that the outcome of the trial would have been different if the time records had been introduced.

Second, relatedly, as [the trial court noted in its opinion], given the evidence presented, the jury was free to infer that Appellant was present at Marino's house when the relevant documents were prepared and submitted. The general time records that Appellant identified during the PCRA proceedings would have done nothing to remove or even detract from the inference that the jury could reasonably have drawn.

Third, as [t]rial [c]ounsel indicated, given the nature of this case, [the] evidence presented by the Commonwealth, and the parties' stipulation that all fraudulent WEDnet documents were sent from the home of [] Mari[no], the fraud scheme originator and ringleader, the time records would not have furthered the defense.

*Id.* at 21-22 (emphasis added; quotation marks and brackets omitted); *see also id.* at 22 (emphasizing that, during trial, Appellant advanced the theory that he was "duped" by Marino).

Moreover,

[t]he evidence showed that Appellant was in regular contact with Marino through various technology. Therefore, **Appellant did not need to be physically present in Marino's home to**

- 9 -

**electronically sign documents or agree that the documents could be signed and sent**. He could have electronically signed documents from remote locations, including work or his own home, before the documents were ultimately transmitted to WEDnet. Similarly, he could have approved execution of the documents before he left the state for work[,] or from remote locations[,] as the documents were being signed and sent.

*Id.* at 22-23 (emphasis added). The PCRA court also observed that Appellant and Marsha both testified concerning Appellant's work schedule, and determined the timesheets "would not have added anything new or different to either the evidence or the defense theory…." *Id.* at 23.

We agree with the reasoning of the PCRA court. As the PCRA court aptly explained, the parties stipulated that all fraudulent communications were transmitted from a computer in Marino's home, but the Commonwealth was not required to prove that Appellant was present in Marino's home when the relevant documents were submitted.[7] Thus, even if the timesheets proved that Appellant was not at Marino's house when the fraudulent documents were transmitted to WEDnet, Appellant has failed to establish that there is a reasonable probability that the outcome of his trial would have been different

_____

[7] We note that on direct appeal, Appellant challenged the sufficiency of the evidence supporting his convictions of tampering with public records. The trial court emphasized that Appellant's convictions under 18 Pa.C.S.A. § 4911(a)(2) did not require proof that he was present at Marino's home when the documents were transmitted or that Appellant himself prepared the documents. Trial Court Opinion, 1/20/22, at 16-17. Instead, the requirements of section 4922(a)(2) were satisfied by Appellant's knowledge and use of the fraudulent submissions. *See id.*

had trial counsel obtained the timesheets and offered them as evidence. As Appellant failed to establish that he suffered prejudice as a result of trial counsels' alleged failure, his first ineffectiveness argument fails. *See Hanible*, 30 A.3d at 439.

In his second argument, Appellant asserts trial counsel were ineffective for failing to object to certain testimony by Commonwealth witness Thomas Venditti (Venditti),[8] which was elicited when the Commonwealth offered as exhibits several documents that were submitted to WEDnet on behalf of R1 Incorporated. Appellant's Brief at 29. Appellant claims Venditti improperly testified that Appellant "signed" several documents; Venditti was not qualified to offer such testimony under Pa.R.E. 901 (Authenticating or Identifying Evidence)[9]; and trial counsel failed to object. *Id.* at 29, 32. Appellant

_____

[8] Venditti is the state director of WEDnet. N.T. (Jury Trial), 7/12/21, at 45.

[9] Generally, "to satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.E. 901(a). Pertinently, Rule 901(b)(11) provides as follows:

> (11) *Digital Evidence.* To connect digital evidence with a person or entity;
>
>> (A) direct evidence such as testimony of a person with personal knowledge; or
>>
>> (B) circumstantial evidence such as:
>>
>>> (i) identifying content; or

*(Footnote Continued Next Page)*

- 11 -

contends that the Commonwealth failed to establish he had access to or control over the computer at Marino's home from which the fraudulent documents were submitted. *Id.* at 33. According to Appellant, "there is simply no way to verify the true author of an electronic signature by the signature alone." *Id.* at 35. Appellant argues that permitting Venditti's testimony without objection allowed the jury to infer that Appellant personally signed the documents, which is contradictory to the theory of the case he presented at trial. *Id.* at 38.

Instantly, the PCRA court concluded trial counsel had a reasonable basis for failing to object, and there is no reasonable probability that the outcome of trial would have been different had trial counsel lodged an objection. PCRA Court Opinion, 4/14/25, at 24-25.[10] The court reasoned as follows:

> The parties stipulated that all transmissions came from a computer located in Marino's home. Throughout the trial[,] **the prosecutor freely acknowledged there was no direct**

_____

> (ii) proof of ownership, possession, control, or access to a device or account at the relevant time when corroborated by circumstances indicating authorship.

Pa.R.E. 901(b)(11).

[10] The PCRA court also concluded Appellant failed to develop this claim during the evidentiary hearing, and that he later "switched theories and argued that trial counsel should have objected based on a ruling made at [a] sidebar conference." PCRA Court Opinion, 4/14/25, at 24. The "ruling" Appellant referenced in his post-hearing brief was merely the trial court's clarification that, although the parties stipulated that the communications originated from Marino's computer, the question of who sent the communications was for the jury. Petitioner's Post-Hearing Brief, 8/12/24, at 12 (unnumbered).

**evidence that Appellant was the person who electronically signed the documents or pushed the "send" button.** Further, no documents or physical evidence demonstrating that Appellant was the specific electronic signatory or transmitter were found in Marino's home, Appellant's home[,] or elsewhere. **The evidence was clear, and the jury was aware, that when the Commonwealth, through its witness or otherwise, indicated that a document sent to WEDnet was "signed" by Appellant, it means that his electronic signature had been affixed to the document.**

….

…[T]he Commonwealth was free to argue, as it did, that circumstantial evidence suggested Appellant accessed the WEDnet account using a computer in Marino's home or was present with Marino, in person or through technology, when documents were signed or submitted. It was also free to argue, in the alternative, that even if [Appellant] was not physically present or did not electronically sign or send document[s] himself, there was sufficient evidence to establish that he participated in the fraud scheme. As discussed above, the jury, in turn, was free to infer Appellant's presence in Marino's home, although such an inference was not needed.

*Id.* (emphasis added).

Moreover, the PCRA court's determination is further supported by

Attorney Jackson's testimony during the evidentiary hearing:

There was never a suggestion that someone else had—I mean, there was no suggestion that anything had been forged. I mean, there were things that [Appellant] had acknowledged signing at least—maybe all of the checks that were deposited in the accounts. … [A]gain, our argument always was that [Appellant] did not submit any of the documents that were submitted by Marino. And we presented that not just through [Appellant's] testimony, but also through Annette Saylor's [(Saylor)][11]

---

[11] Saylor was employed as a bookkeeper for Marino between 2004 and 2016. N.T. (Jury Trial), 7/13/24, at 48. At Marino's direction, Saylor issued checks
*(Footnote Continued Next Page)*

- 13 -

testimony[,] who indicated that she never had any dealings with [Appellant] about the things that were submitted to WEDnet.

N.T. (PCRA Hearing), 3/11/24, at 56. Attorney Jackson also testified that it was clear from the testimony and from her closing argument that no evidence was found in Appellant's home. *Id.* at 56-57.

Upon review, we agree that trial counsel had a reasonable basis for not objecting to Venditti's testimony. Under the circumstances of this case, where it was repeatedly made clear to the jury that all fraudulent communications had been sent to WEDnet from Marino's home computer, Venditti's statement that Appellant "signed" certain documents merely indicated that Appellant's purported electronic signature appeared on the documents. Moreover, in light of the clear acknowledgements by the Commonwealth that there was no direct evidence that Appellant himself signed or sent the fraudulent documents, Appellant failed to establish he suffered prejudice as a result of trial counsel's failure to object to Venditti's brief statement that Appellant "signed" certain documents. Accordingly, trial counsel were not ineffective in this regard. *See Commonwealth v. Williams*, 899 A.2d 1060, 1063-64 (Pa. 2006) (stating that "a court will not find counsel to be ineffective if the particular course

_____

from the bank account associated with Marino's business, YKT Corporation, to other entities, including Appellant and Appellant's business. *See generally id.* at 50-67.

chosen by counsel had some reasonable basis designed to effectuate his client's interest.") (citation omitted).

In his final argument, Appellant asserts trial counsel were ineffective for failing to disclose to him a plea bargain offered by the Commonwealth.[12] Appellant's Brief at 41. Appellant claims that he would have entered a guilty plea if trial counsel had properly informed him of the offer. *Id.* at 41, 48. According to Appellant, he was not informed of the plea deal until jury selection, and (citing the "legalese employed by the Commonwealth's attorney[,]") he did not understand the nature of the plea at that time. *Id.* at 43. Appellant stated that he believed the offer recited at jury selection was the same as the original offer that he had rejected. *Id.* at 45.[13]

_____

[12] Immediately after jury selection, the prosecutor stated the following:

> [J]ust for matter of the record, I want to state that a proposed guilty plea offer was sent to [trial counsel] last Friday…. That offer was to plead to one count of theft by deception, Title 18, Section 3922(a)(1). That would be graded as a felony of the third degree, carrying an offense gravity score of 5, with a minimum standard range sentence of restorative sanctions to 9 months. We are here now. That offer—having just picked a jury, that offer is now withdrawn.

N.T. (Jury Selection), 7/9/21, at 117 (paragraph break omitted). Thereafter, Appellant replied, "Okay." *Id.*

[13] We observe that the argument presented in Appellant's brief differs slightly from the one raised in his amended PCRA petition. In his amended PCRA petition, Appellant averred trial counsel had informed him of a plea offer, but the information was inaccurately conveyed (*i.e.*, trial counsel informed him the Commonwealth's offer included a one-year prison sentence, where in fact,
*(Footnote Continued Next Page)*

It is well settled that "[a] criminal defendant has the right to effective counsel during a plea process as well as during trial." ***Commonwealth v. Patterson***, 143 A.3d 394, 397 (Pa. Super. 2016) (citation omitted).

> Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea. Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases.

***Commonwealth v. Barndt***, 74 A.3d 185, 192 (Pa. Super. 2013) (citation omitted).

Here, the PCRA court detailed the pertinent testimony from the PCRA hearing and addressed Appellant's claim as follows:

> In the week leading to the trial in this case, Appellant and his five co-defendants were offered plea deals that were significantly reduced from earlier plea offers. ***All*** co-defendants, including the fraud scheme ringleader, [] Marino, … accepted the offers and pled guilty before trial began. Before jury selection, Appellant knew that all co-defendants had pled guilty and that only his case was going to trial.
>
> The offer to Appellant was a plea to one count of theft by deception, a felony of the third degree, with an offense gravity score of 5 and standard range of [restorative sanctions] to 9 months. It was an open plea as to sentencing but required Appellant to pay restitution of $70,835. In exchange, the

_____

the offer included a probationary term). ***See*** Amended PCRA Petition, 3/5/24, at ¶¶ 120-21. By contrast, Appellant now suggests the plea offer placed on the record before jury selection was an entirely new plea offer. ***See*** Appellant's Brief at 44 (arguing his conversation with Attorney Blair following jury selection demonstrates he was not aware of the potential sentence connected with the plea offer, and "he was not aware of this new plea offer at all.").

Commonwealth would *nol pros* all other counts. Appellant did not accept the offer. Accordingly, after jury selection, the prosecutor withdrew the offer on the record. In response to the prosecutor's recitation and withdrawal of the offer, Appellant said, "Okay."

During the PCRA hearing, Appellant testified that Attorney Jackson never conveyed the offer to him. He stated that the first time he learned of the offer was when the prosecutor withdrew it immediately after jury selection. Appellant also said he informed Attorney Blair that Attorney Jackson had not conveyed the offer to him[,] and Attorney Blair responded by saying the offer "probably" would have resulted in no jail time, but it was now too late. Appellant additionally stated that Attorney Jackson was too busy to prepare him for trial after jury selection, but that if she had met with him[,] he would have questioned her about the plea offer. According to Appellant, he went to trial because Attorney Jackson assured him that he could beat the charges; however, had he known about the offer, he would "without a doubt" have taken it rather than go to trial. Finally, Appellant indicated that he did not believe the Commonwealth had previously tendered any plea offers.

In contrast, Attorney Jackson testified that over the course of this case[,] the Commonwealth extended to Appellant (and all co-defendants) pretrial plea offers on two different occasions. She stated that both offers were communicated to and rejected by Appellant.

Specifically, Attorney Jackson testified that the first offer, communicated during the early pretrial workup before Attorney Blair had been retained as co-counsel, was "pretty aggressive." That offer was a plea to multiple felonies (two counts of conspiracy to dealing in proceeds, a felony of the first degree with an offense gravity score of eight, and a total of six counts of theft as felonies of the third degree with offense gravity scores of six), which subjected Appellant to substantial sentencing exposure. The offer was open as to sentencing, except for restitution of $70,835. In exchange, the Commonwealth would *nol pros* the remaining charges. Attorney Jackson communicated the offer to Appellant, but did not recommend that he accept it. Appellant rejected the offer.

The second offer, summarized above, was communicated by the Commonwealth to Attorney Jackson on Friday, July 2, 2021,

- 17 -

one week before jury selection. Attorney Jackson testified that the second offer was a "big deal" because it was far more favorable to Appellant than the first and subjected him to far less sentencing exposure. She spoke with Appellant about the offer the day it was received, or the next day while meeting to prepare for trial. [Attorney Jackson] explained to Appellant the differences between the two offers, outlined his sentencing exposure if he was convicted at trial of multiple felonies, and recommended that he seriously consider taking the second offer, as it would have been to only one felony as opposed to what he was facing at trial. Appellant appeared to have understood the differences between the first and second offers[ and] the potential consequences of going to trial…. Ultimately, both [Appellant] and [Marsha] were insistent that he not plead guilty and [] go to trial.

Attorney Jackson also testified that, from the beginning of the case, Appellant was adamant that he was innocent, not interested in a negotiated resolution, and wanted a trial to clear his name. His rejection of the second offer (as well as the first) was a reiteration of and consistent with that firmly held position.

The bottom line is that the testimony of Appellant and Attorney Jackson was diametrically opposed. In summary, Appellant testified that Attorney Jackson never communicated the offer to him. In contrast, Attorney Jackson testified that there was no doubt in her mind that she discussed the plea with Appellant, but that he unequivocally declined the second offer and wanted to go to trial. … [**W**]**e found Attorney Jackson's testimony to be credible and Appellant's contrary testimony not to be credible.**

PCRA Court Opinion, 4/14/25, at 8-11 (some emphasis added; record citations and one paragraph break omitted; some capitalization modified); *see also id.* at 12 (stating that "Attorney Jackson's testimony is credible and supported by the testimony of Attorney Blair, the testimony of [Marsha], the record, and [the PCRA court's] real-time observations."), 12-14 (summarizing the testimony of Attorney Blair and Marsha, as well as the PCRA court's own recollections of the case history).

- 18 -

The PCRA court's determination and its credibility findings are supported by the record. To the extent Appellant suggests Attorney Jackson's testimony during the PCRA hearing was incredible, we reiterate that this Court cannot reassess the PCRA court's sound credibility findings. *See Miranda*, 317 A.3d at 1075 (a PCRA court's credibility determinations are binding on this Court so long as they are supported by the record). As the PCRA court aptly noted, "Appellant is obviously displeased with the outcome of the trial and the sentence he received. … 'Buyer's remorse' is not grounds for an ineffective assistance of counsel claim." PCRA Court Opinion, 4/14/25, at 14. For the reasons stated by the PCRA court, we conclude Appellant's underlying claim lacks merit. Thus, trial counsel cannot be deemed ineffective on this basis.

Based upon the foregoing, we affirm the PCRA court's order denying Appellant's first PCRA petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/3/2026

- 19 -